10-2723-bk
Statek Corp. v Development Specialists, Inc. (In re Coudert Bros. LLP)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: April 29, 2011                    Decided: February 28, 2012)

Docket No. 10-2723-bk

_____

IN RE COUDERT BROTHERS LLP,

*Debtor.*

_____

STATEK CORPORATION,

*Appellant,*

*-v.-*

DEVELOPMENT SPECIALISTS, INC., PLAN ADMINISTRATOR FOR COUDERT BROTHERS LLP,

*Appellee.*

_____

Before:

NEWMAN, CALABRESI, HALL, *Circuit Judges.*

_____

Appellant Statek Corporation ("Statek") appeals from an order of the United States

District Court for the Southern District of New York (Hellerstein, *J.*), affirming the order of the

United States Bankruptcy Court for the Southern District of New York (Drain, *J.*) disallowing its

claim against the bankruptcy estate of Coudert Brothers LLP ("Coudert") and affirming the

1

denial of Statek's motion to reconsider the bankruptcy court's order. The bankruptcy court should have applied the choice of law rules of the State of Connecticut, where Statek's pre-bankruptcy action against Coudert had been commenced, and not the choice of law rules of New York State, where the bankruptcy court is located.

VACATED AND REMANDED.

———————————————

EDWARD J.M. LITTLE, (Lisa A. Cahill, *on the brief*), Hughes Hubbard & Reed LLP, New York, New York, *for Appellant*.

KAREN S. FRIEMAN, (David S. Tannenbaum, *on the brief*), Stern Tannenbaum & Bell LLP, New York, New York, *for Appellee*.

———————————————

HALL, *Circuit Judge*:

Appellant Statek Corporation appeals from an order of the United States District Court for the Southern District of New York (Hellerstein, *J*.), affirming the order of the United States Bankruptcy Court for the Southern District of New York (Drain, *J*.) disallowing its claim against the estate of Coudert in *In re Coudert Brothers LLP*, Case No. 06-12226 (Bankr. S.D.N.Y.) and affirming the denial of Statek's motion to reconsider the bankruptcy court's order.

The bankruptcy court should not have applied the choice of law rules of New York, the state in which it sits, but instead the choice of law rules of Connecticut, where Statek filed its pre-bankruptcy action seeking damages that later constituted its claim against the bankruptcy estate. Although the case was not technically transferred under 28 U.S.C. § 1404(a), the practical effect of filing a proof of claim in the bankruptcy court was to transfer the case from Connecticut federal court to New York federal court. Extending the well-established rule of *Van Dusen v. Barrack*, 376 U.S. 612 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), we

2

hold that in a case such as this one, where: (1) the claim before the bankruptcy court is wholly derived from another legal claim already pending in a parallel, out-of-state, non-bankruptcy proceeding; and (2) the pending original, or "source," claim was filed in a court prior to the commencement of the bankruptcy case, bankruptcy courts should apply the choice of law rules of the state where the underlying prepetition claim was filed.

We therefore VACATE the district court's order and REMAND the case to the district court with instructions to remand the case to the bankruptcy court and, in so doing, instructing the bankruptcy court to apply the choice of law rules of Connecticut to decide Statek's motion for reconsideration.

## I.    Background

Coudert, the debtor in this case, was for over a century one of the world's leading international law firms. The claimant is one of Coudert's former clients, Statek Corporation.[1] Statek's claim is based on an asserted tort, legal malpractice, committed by Coudert against Statek during the course of their attorney-client relationship. Statek's allegations are roughly as follows.

From 1984 until 1996, Statek was controlled by Hans Frederick Johnston. Johnston, who had obtained control of the company by fraud, devoted most of his tenure with Statek to looting the corporate treasury and traveling lavishly at the company's expense. In furtherance of his schemes, Johnston caused Statek to retain Coudert in 1990. Although Coudert's fees were paid

---

[1] Statek originally filed the proof of claim on behalf of itself and its parent corporation, Technicorp International II, Inc. ("TCI-II"). TCI-II was subsequently dropped from the complaint underlying the proof of claim, however, and Statek proceeded through the claim objection proceeding as the only claimant.

3

by Statek, the firm counseled Johnston personally, helping him to hide and launder various assets stolen from Statek. Among other things, lawyers in Coudert's London office created secret shell corporations, established offshore asset protection trusts, procured safe deposit boxes in the name of those trusts, assisted with West Indian real estate purchases, and coordinated the removal from the United States of a multi-million dollar art and stamp collection.

Eventually, Johnston's crimes were discovered. He was removed from power and was sued by Statek for fraud and waste. While the fraud and waste lawsuit was ongoing, Statek strove to locate company funds that Johnston and his associate Sandra Spillane misappropriated. The search only intensified after Statek obtained a judgment against Johnston and Spillane for over $30 million. Progress was slow because Johnston had spread his ill-gotten gains widely, moving money into and out of shell corporations, offshore trusts, art and collectibles, and a variety of other laundering devices. Many of the assets were believed to be in the hands of third parties.

For assistance, Statek turned to its old law firm, Coudert. As the fraud and waste lawsuit got underway in 1996, Statek sent a request to Coudert for any information and all files relating to its representation of Statek during the Johnston years. Coudert responded with six files pertaining mostly to the creation of a Statek subsidiary. After Statek secured a large money judgment against Johnston, it and two other judgment creditors forced Johnston into involuntary bankruptcy in the United Kingdom. At that point, a trustee was appointed for Johnston's estate and charged with collecting its assets. In 2002, the trustee approached Coudert for information about its representation of Statek and learned about Courdert's work for Johnston moving art to Europe. More inquires led to more revelations. By 2004, the trustee had learned of Coudert's

4

role in setting up Johnston's offshore asset protection trusts, obtaining secret safe deposit boxes, and facilitating the West Indian property deal.

Statek believes that Coudert's delay turning over files and information, to which as a former client it was entitled, allowed Johnston to irretrievably dispose of millions of dollars. Statek also asserts that if Coudert had been forthcoming about its representation during Johnston's reign, Statek would have saved the time and money it was forced to expend recovering assets hidden around the world. All told, Statek claims that Coudert's inaction has cost it in the neighborhood of $85 million.

In October 2005, Statek filed a malpractice lawsuit against Coudert in state court in Connecticut where Johnston had allegedly lived, run Statek, and received many of Coudert's services.[2] Several months later, Coudert—which was already in dissolution—filed a motion to dismiss Statek's action on the basis of lack of personal jurisdiction and *forum non conveniens*. On September 22, 2006, while that motion was pending, Coudert filed a petition for Chapter 11 bankruptcy in the Southern District of New York. This filing triggered an automatic stay of Statek's Connecticut action pursuant to 11 U.S.C. § 362. In the bankruptcy court, Statek thereafter filed a proof a claim based on its pending malpractice action, and it attached to its claim as an exhibit the complaint it had filed in state court almost a year earlier. In March 2007, Coudert removed the Connecticut action to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1452, which allows for removal of any state court action

_____

[2] The state action also named several individual partners at Coudert, but none of those parties are involved with the bankruptcy claim at issue here.

5

over which there is bankruptcy jurisdiction.[3]  Once the Connecticut action was removed, Statek

moved the bankruptcy court in New York for relief from the automatic stay so that it could

proceed with the malpractice action in federal district court in the District of Connecticut.

Coudert objected, and the two sides ultimately compromised:  the stay was lifted only as to

conducting discovery on and resolving Coudert's motion to dismiss in the Connecticut action.  In

February 2008, the district court in Connecticut (Underhill, *J.*) conditionally dismissed Statek's

complaint on *forum non conveniens* grounds, but Coudert would not consent to the conditions.[4]

The case thus remained pending in Connecticut and the stay was automatically reimposed.  In

June 2008, Statek again moved the bankruptcy court for relief from the stay, and the parties

again settled on less than a full relief from the stay.  In August 2008, the stay was partially lifted

so that Statek could file an amended complaint in the District of Connecticut, which was also

incorporated into its proof of claim pending in the bankruptcy court.  Additionally, the

bankruptcy court granted relief from the stay to allow for mediation between the parties and

Coudert's malpractice insurer with the hopes of liquidating the claim.  As might be inferred, the

mediation failed and, in March 2009, the Plan Administrator (Coudert's Chapter 11 Plan for

Liquidation having been confirmed) filed a motion in bankruptcy court to disallow the claim.

Although motions to disallow claims are "core proceedings" for the purposes of 28 U.S.C. § 157,

the validity of Statek's claim turned on a finding of tort liability against Coudert.  Under these

---

[3] Because Statek sought damages from Coudert, the Connecticut action was certainly "related to" Coudert's bankruptcy case, and the bankruptcy court thus had original, though not exclusive, jurisdiction over it pursuant to 28 U.S.C. § 1334(b).

[4] The district court made dismissal contingent on Coudert (1) agreeing to lift the automatic stay, which would permit Statek to file in another forum, and (2) waiving any statute of limitations defense in the new forum.

6

circumstances, the bankruptcy court—with the consent of the parties—applied the procedural rules of an "adversary proceeding" to the dispute, treating the Plan Administrator's motion to disallow as a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

In July 2009, the bankruptcy court, relying on our decision in *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 601-02 (2d Cir. 2001), applied New York choice of law rules to Statek's claim. Under New York's anti-forum shopping "borrowing statute," N.Y. C.P.L.R. § 202, the bankruptcy court determined that because Statek was a non-resident, its claim must be judged by the shorter of either New York's statute of limitations or the statute of limitations of the jurisdiction where the claim accrued (presumably Connecticut or the United Kingdom). As Statek had already conceded that its claim was untimely under the New York statute of limitations, the bankruptcy court determined that provision to be as short as or shorter than any other possibilities, applied it, and disallowed the claim.

Statek filed an unsuccessful motion for reconsideration and then sought to have its claim reinstated on appeal to the United States District Court for the Southern District of New York (Hellerstein, *J.*). That district court affirmed the bankruptcy court's two orders. Statek now appeals that decision.

## II. Discussion

### A. The District Court's Appellate Jurisdiction

At the time Statek appealed to the district court, a party seeking review of a bankruptcy judge's decision had ten days from "the date of the entry of the judgment, order, or decree" to file a notice of appeal to a district court or bankruptcy appellate panel. Fed. R. Bankr. P. 8002(a)

7

(2009).[5] The ten-day deadline is tolled if one of a specified list of motions is filed in the bankruptcy court. *See* Fed. R. Bankr. P. 8002(b) (2009). But once the time to appeal runs, a district court or bankruptcy appellate panel has no jurisdiction to consider an untimely appeal. "[T]he time limit contained in Rule 8002(a) is jurisdictional, and . . . in the absence of a timely notice of appeal in the district court, the district court is without jurisdiction to consider the appeal, regardless of whether the appellant can demonstrate 'excusable neglect.'" *Siemon v. Emigrant Sav. Bank (In re Siemon)*, 421 F.3d 167, 169 (2d Cir. 2005).

Appellee Plan Administrator challenges the timeliness of Statek's appeal to the district court from the bankruptcy court's initial order disallowing the claim.[6] (Appellee's Br. 2 n.2.). Its argument is based on the following timeline:

| | |
|---|---|
| 7/21/2009 | Bankruptcy court order disallowing Statek's claim. |
| 7/31/2009 | Statek's motion for reconsideration filed. |
| 9/8/2009 | Bankruptcy court denies motion for reconsideration. |
| 9/16/2009 | Statek appeals both orders to the district court. |

---

[5] Effective December 1, 2009, Rule 8002 now provides a fourteen-day window to file a notice of appeal.

[6] We may (and indeed must) consider the timeliness of the notice of appeal, even though the Plan Administrator apparently failed to present the issue to the district court. Rule 8002 is jurisdictional. *See In re Siemon*, 421 F.3d at 169. A circuit court has an "independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 287 (2d Cir. 2011) (quotation marks omitted). "For that reason, every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quotation marks omitted). "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it." *Id.* "When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.* (alterations omitted).

8

Accordingly, regardless of whether the motion for reconsideration tolled the time to appeal the bankruptcy court's initial order, Statek's appeal of that order disallowing its claim was untimely. Its appeal of the denial of the motion for reconsideration, however, was timely. The district court's review—and, by extension, our review as well—is thus limited to the bankruptcy court's denial of Statek's motion to reconsider.

B.    Standard of Review

When reviewing a bankruptcy court decision that was subsequently appealed to a district court, we review the bankruptcy court's decision independent of the district court's review. *U.S. Lines v. United States (In re McLean Indus., Inc.)*, 30 F.3d 385, 387 (2d Cir. 1994); *see also DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 94 (2d Cir. 2011) ("We look through the district court to the bankruptcy court's decision . . . ."). A bankruptcy court's denial of a motion to reconsider a disallowed claim is a discretionary decision, reviewed under the familiar and deferential abuse-of-discretion standard. *See Univ. Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006); *see also Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 202 (3d Cir. 2003) (appeals court "review[s] the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof" (quotation marks omitted)). Although this standard affords a bankruptcy judge substantial latitude, "we nonetheless remain mindful that a bankruptcy court would *necessarily* abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 152 (2d Cir. 2002) (alteration and quotation marks omitted, emphasis added).

C.     <u>Choice of Law</u>

We are faced in this case with apparently conflicting rules on choice of law in federal

cases. It is well established that a federal court sitting in diversity must generally apply the

choice of law rules of the state in which it sits. And it is now well established that a bankruptcy

court must also apply state choice of law rules. But it is also clear that when a case is

transferred, the choice of law rules of the state in which the case was initially filed transfer with

it. This case presents a hybrid situation, and requires us to decide which state's choice of law

rules should apply when a bankruptcy court sitting in one state is resolving a bankruptcy claim

arising from a state-law action previously filed in another state.

1.     *Choice of Law Rules in Diversity Cases*

When a federal district court sits in diversity, it generally applies the law of the state in

which its sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487, 496 (1941).[7]  "There is no federal general common law." *Erie R.R. Co. v.*

*Tompkins*, 304 U.S. 64, 78 (1938). Applying *Erie*, *Klaxon* held that state choice of law rules are

substantive state law. 313 U.S. at 496. *Klaxon*'s logic provides important foundational

principles for our analysis in this case. "Once it is recognized that federal choice of law rules are

a species of federal common law, the . . . ability of the federal courts to create federal common

law and displace state created rules is severely limited." *In re Gaston*, 243 F.3d at 606. The

federal courts are not powerless to displace state choice of law rules,[8] but, without express

---

[7] When a district court exercises federal question jurisdiction, federal law provides the substantive rules of decision and there is generally no need to consider choice of law.

[8] This would be in contrast to any substantive state laws that relate exclusively to matters outside the purview of the federal courts—perhaps, for example, certain elements of state family

authorization from Congress, we can do so only by making federal common law. Given the separation of powers as between Congress and the judiciary, this is not the preferred method of displacing state substantive law. Indeed, as the Supreme Court recently stated:

> Recognition that a subject is meet for federal law governance, however, does not necessarily mean that federal *courts* should create the controlling law. Absent a demonstrated need for a federal rule of decision, the Court has taken the prudent course of adopting the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation.

*Am. Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527, 2536 (2011) (emphasis added) (citations and citation marks omitted); *see also Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966) ("Whether latent federal power should be exercised to displace state law is primarily a decision for Congress."). In most situations this "demonstrated need for a federal rule of decision," *see American Electric Power*, 131 S. Ct. at 2536, arises because application of state law would conflict with a federal policy or interest, *see Atherton v. FDIC*, 519 U.S. 213, 219 (1997).

### 2. *Choice of Law Rules in Bankruptcy Cases*

*Klaxon* and its progeny set forth clear rules for federal courts sitting in diversity. But the rules for bankruptcy courts are more difficult to discern. 28 U.S.C. § 1334(b) vests the district courts with original jurisdiction over civil proceedings "arising under," "arising in," or "related

---

law. From a federalism perspective, the limits on the federal courts' power to create common law track those of Congress's legislative power. *See Erie*, 304 U.S. at 78-79; *cf.* Paul M. Bator et al., *Hart & Wechsler's The Federal Courts and the Federal System* 713-14 (2d ed. 1973) (federally-created choice of law rules applicable in the federal courts do not create federalism problems because Congress has the power to create, or delegate authority to create, rules for the courts that are "necessary and proper" to the exercise of federal court jurisdiction).

to" cases under the Bankruptcy Code. Such jurisdiction extends not only to questions of federal law, but also to many state law disputes. *Erie* made clear that state law provides the rules of decision for the *merits* of state law claims in bankruptcy court. 304 U.S. at 77. Until recently, however, there was controversy about whether state or federal law should provide the means for choosing the state law that is ultimately applied to decide a state law claim in bankruptcy court—the choice of law. We partially resolved this issue in *In re Gaston*, 243 F.3d 601, where we held that state, not federal, choice of law rules must control.

*In re Gaston* concerned an adversary proceeding filed by the trustee of a bankrupt law firm's estate to collect unpaid legal fees from a former client. The bankruptcy proceedings were held in the Southern District of New York, and it was there that the trustee initiated the adversary proceeding. The client who owed the fees, however, lived in Idaho, and it was in Idaho where the law firm's services had been rendered. The district court[9]—without discussion—followed *Klaxon*, applied New York choice of law rules, and determined that New York's borrowing statute required application of the New York statute of limitations. 243 F.3d at 604, 609.

On appeal we held that, although the source of the district court's jurisdiction was bankruptcy, not diversity, *Klaxon* nevertheless provided guidance. *Id.* at 601-02. We recognized that because bankruptcy is a form of federal question jurisdiction, bankruptcy courts in some of our sister circuits apply federal choice of law principles rather than state choice of law rules, *see id.* at 605 & n.6 (citing cases), but we rejected this approach. We noted that after *Klaxon* federal

_____

[9] At some point, pursuant to 28 U.S.C. § 157, the district court withdrew its referral of this proceeding and conducted a jury trial itself. *See In re Gaston*, 243 F.3d at 605 n.5.

choice of law rules must be regarded as "a species of federal common law." *Id.* at 606. And because federal common law should be applied only where there is "a significant conflict between some federal policy or interest and the use of state law," *id.* at 606 (quoting *Atherton*, 519 U.S. at 218), we were loath to use it. We concluded, therefore, that unless there was an important federal interest or policy concern that would justify application of federal choice of law rules in place of state choice of law, the district court's decision should stand. Finding no such interest or concern, we affirmed the district court's decision to use state rather than federal choice of law rules. *Id.* at 607.

> 3. *Choice of Law Rules when Bankruptcy Claim Consists of a Previously-Filed State-Law Action*

The bankruptcy court read *In re Gaston* as requiring it to apply the choice of law rules of its forum state, New York, which thereby caused it to disallow Statek's claim. On appeal Statek disagrees that New York's choice of law rules control. It argues that the applicable choice of law rules are those of Connecticut, where Statek filed its original malpractice action. *In re Gaston*, although adopting the general rule that bankruptcy courts must apply state choice of law rules, provides no guidance as to *which* state's choice of law rules apply. That is a question of first impression, to which *Klaxon* provides the answer.

As noted above, *Klaxon* partly concerned whether state or federal choice of law should apply in diversity cases. But *Klaxon* also addressed *which* state's choice of law controls, requiring district courts to apply the state choice of law rules of the state in which they sit. 313 U.S. at 496. Practically, this rule prevents forum shopping between the state and federal court systems ("intra-state forum shopping"), which was apparently a serious problem in the pre-*Erie* days of general federal common law. Back then, if the law applied by the federal district court

13

of a state was more favorable to plaintiffs than the law of that state's own courts, prospective plaintiffs had an incentive to create diversity jurisdiction (often by reincorporating out of state) and file in federal court. Indeed, the *Erie* Court's decision to eliminate general federal common law was in part justified by intra-state forum shopping concerns. *See Erie*, 304 U.S. at 74.

*Klaxon* echoes *Erie*'s hostility toward intra-state forum shopping. By requiring federal courts to treat a claim exactly the same as would the courts of the state in which they sit, *Klaxon* ensures that a plaintiff's choice of forum within a given state will not be influenced by choice of law considerations. According to the Court in *Klaxon*, any other result would allow "the accident of diversity of citizenship [to] constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." 313 U.S. at 496.

This effective bar on intra-state forum shopping comes, of course, at the expense of permitting forum shopping between states ("int*er*-state forum shopping"), which *Klaxon* regards as an unavoidable consequence of the federal system. *See* 313 U.S. at 496. Over time, however, inter-state forum shopping has come to be perceived less as a necessary evil of federalism and more as a right to be enjoyed by plaintiffs and protected for their benefit. Thus, in *Van Dusen*, 376 U.S. 612, the Supreme Court held that when a defendant obtains a change of venue under 28 U.S.C. § 1404(a), the choice of law rules of the state where the plaintiff originally filed the claim "follow" the action to the new forum. In deciding the issue, the Court described the prerogative federal law affords plaintiffs to choose among federal forums as a "venue privilege," and the Court cautioned against construing § 1404(a) in a way that would "defeat the state-law advantages that might accrue from the exercise of this venue privilege." *Van Dusen*, 376 U.S. at 635. When applying *Klaxon*, "the critical identity to be maintained is between the federal

14

district court which decides the case and the courts of the State in which the action was filed." *Id.* at 639.

*Van Dusen*, in other words, is far less concerned about the fact that plaintiffs may engage in inter-state forum shopping on the basis of competing choice of law doctrines than it is with making sure that *only* plaintiffs engage in forum shopping. In deciding where to file a claim, plaintiffs are permitted to forum-shop among state courts. But once that claim is filed, defendants in state courts are generally locked into the forum unless removal is possible. If a *defendant* could forum-shop using § 1404(a) to transfer venue and obtain different choice of law rules, the defendant would "achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," the main evil *Klaxon* sought to avoid. *See Van Dusen*, 376 U.S. at at 638.

Any remaining doubt about the Supreme Court's tolerance for inter-state forum shopping by plaintiffs was put to rest in *Ferens*, 494 U.S. 516. There, the Court extended *Van Dusen*'s rule to cover *plaintiff-initiated* transfers under § 1404(a). *Ferens*, 494 U.S. at 519. While recognizing its rule would allow plaintiffs to separate their shopping for favorable choice of law rules from their ultimate choice of forum, *id.* at 531, the Court believed a plaintiff's right to shop for favorable choice of law rules is so important that it should not be compromised "by being put to a choice between a choice of law versus forum," *id.* at 529. Under *Ferens*, a plaintiff may "have his cake and eat it too." *Id.* at 537 (Scalia, *J.*, dissenting).

Shopping for favorable choice of law rules very often comes down to shopping for favorable statutes of limitations. *See, e.g.*, *Ferens*, 494 U.S. at 519-20; *Van Dusen*, 376 U.S. at 630-32 & n.26. To mitigate against abusive statute-of-limitations shopping, some states have

15

created mechanisms—binding on the local federal courts via *Klaxon*—that discriminate against claims accruing out of state. New York's borrowing statute, N.Y. C.P.L.R. § 202, guards against forum shopping by out-of-state plaintiffs by mandating use of the *shortest* statute of limitations available. If New York's statute of limitations is shorter than the statute of limitations of the place where the cause of action accrued, New York courts should apply the local rule; if the foreign statue of limitations is shorter, then that is what controls.

Given all this, it is perhaps not surprising that the issue at the heart of this case is—as it was in *In re Gaston*—whether New York's borrowing statute should apply in federal bankruptcy proceedings held in the Southern District of New York. In *In re Gaston*, both principles underlying *Klaxon* were served by applying New York law (the forum state of the bankruptcy court in that action) to the trustee's collection action. *In re Gaston*'s holding avoided relying on federal common law and also ensured that the trustee's claim would be treated the same in federal court as it would have been in state court. We recognized that the facts of *In re Gaston* were largely analogous to a *non-transfer* diversity case. The trustee for the law firm's estate brought, for the first time, a claim in bankruptcy court in New York that, but for the bankruptcy, could have been brought by the law firm in New York state court. If the law firm in *In re Gaston* had attempted to collect on its unpaid fees in a New York court before bankruptcy was filed, New York's borrowing statute would have applied. *Klaxon*'s goal of establishing equal treatment of claims by the state and federal courts would clearly have been violated by a rule applying a different state's law to the claim simply because the law firm filed for bankruptcy and its interest in the fees was assigned to the trustee of its estate. In *In re Gaston*, the trustee—the

16

party bringing the claim—chose the forum, and principles of state/federal uniformity compelled us to apply the law of the state of that forum.

The same cannot be said in this case. Except by the most formalistic of interpretations, Statek—the claimant here—did not choose to litigate in New York. Instead, it affirmatively chose to file its complaint against Coudert somewhere else. The record is clear that Statek exercised its venue privilege in favor of Connecticut. Only in the midst of the Connecticut proceedings—well after they were initiated, when Coudert had filed for bankruptcy—did Statek come to New York. Realistically, Statek had no other option. *Cf. Stern v. Marshall*, 131 S. Ct. 2594, 2614 (2011) (creditor-plaintiff "did not truly consent to resolution of [state-law claims] in the bankruptcy court proceedings," because by operation of the Bankruptcy Code, "[h]e had nowhere else to go if he wished to recover from [the] estate."). That Statek's participation in the bankruptcy is an extension of the Connecticut action is beyond doubt. Statek could only hold itself out as a potential creditor in the bankruptcy by virtue of the pending Connecticut action, and, accordingly, its proof of claim was nothing more than a copy of the Connecticut complaint. The two proceedings are functionally one and the same.

Under these circumstances, it would be fundamentally unfair to allow Coudert's bankruptcy, coming as it did in the midst of the Connecticut action, to deprive Statek of the state-law advantages adhering to the exercise of its venue privilege. To hold otherwise would be to allow the defendant Coudert to use a device of federal law (the bankruptcy code) to choose the forum and accompanying choice of law—a practice forbidden by *Klaxon*. *See Van Dusen*, 376 U.S. at 638; *see also Ferens*, 494 U.S. at 524. It would also lead to the ironic result that New

17

York's anti-forum shopping borrowing statute would be applied to defeat the claim of a party that did not shop for New York as a forum.

We recognize that our opinion in *In re Gaston* employs some broad language, in dicta, that could be read as reaching every state law claim in every bankruptcy case without exception.[10] But *In re Gaston* did not address a claim like Statek's, which is identical to and inseparable from others pending between the parties in foreign jurisdictions. If *In re Gaston* were extended to reach such cases, we believe some of the very principles that case seeks to advance—namely harmony between state and federal courts—would be undermined.

For cases such as this one, we hold that bankruptcy courts should follow *Van Dusen* and look to the choice of law rules of the state where the underlying prepetition complaint was filed. This is the appropriate course of action where, as here: (1) the claim before the bankruptcy court is wholly derived from another claim already pending in a parallel, out-of-state, non-bankruptcy proceeding; and (2) the pending original, or "source," claim was filed in a court prior to the commencement of the bankruptcy case.

## III.   Conclusion

In denying Statek's motion to reconsider, the bankruptcy court stated it was "bound by the Second Circuit's determination in *In re Gaston*" to apply New York choice of law rules. That reading of *In re Gaston* constituted a legal error, and thus *ipso facto* was an abuse of discretion. *See In re Highgate Equities, Ltd.*, 279 F.3d at 152. Statek's proof of claim was functionally an extension of its prepetition claim pending in a lawsuit against Coudert. By filing

---

[10] For example, our opinion in *In re Gaston* includes the statement: "[W]e decide that bankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state." 243 F.3d at 601-02.

18

the underlying action in Connecticut, Statek exercised its right as plaintiff to choose the venue in which it wanted to litigate the claim, and it was entitled to take advantage of whatever choice-of-law rules that selection entailed. Coudert's subsequent filing for bankruptcy in New York, which in essence approximated a defendant-initiated venue transfer, did not deprive Statek of the state-law advantages attending its original choice of forum.

The portion of the district court's order affirming the bankruptcy court's July 21, 2009, order disallowing claim number 239 is VACATED, and the case is REMANDED with instructions to DISMISS IN PART for lack of subject-matter jurisdiction. The portion of the district court's order affirming the bankruptcy court's denial of Statek's motion for reconsideration is REVERSED, and the case is REMANDED to the district court with instructions to REMAND IN PART to the bankruptcy court with instructions to apply Connecticut's choice of law rules in deciding Statek's motion to reconsider.