Vincent J. BELLOWS, Appellee,

v.

Dennis DAINACK and Brian Van Houten, Appellants.

No. 859, Docket 76–7531.

United States Court of Appeals, Second Circuit.

Argued April 28, 1977.

Decided May 16, 1977.

---

George H. Rosen, Monticello, N. Y., for appellee.

Irving Galt, New York City (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., A. Seth Greenwald, Asst. Atty. Gen., New York City, of counsel), for appellants.

Before MANSFIELD, Circuit Judge, SMITH, Chief Judge,* and PALMIERI, District Judge.**

\* Of the United States District Court for the District of Montana, sitting by designation.

\*\* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Defendants argue here, as they did on two occasions before the district court, that the plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. The district court properly rejected this contention. It is well-established that local law enforcement officers

PALMIERI, District Judge:

This action, brought under 42 U.S.C. § 1983, is based on an incident which occurred in the rural community of Livingston Manor, Sullivan County, during a time when a fireman's carnival was taking place. Late in the night of July 16, 1972 or early in the morning of July 17, 1972, the plaintiff was taken into custody for public intoxication by the defendants, Dainack and Van Houten, who are New York State troopers. It does not appear to have been disputed that the plaintiff had been drinking, that he had been present at an altercation near a local public telephone booth earlier that night, and that the defendants had been informed of the incident. At the time of his arrest, the plaintiff was seated with two friends on the stoop in front of a two-story commercial building, the second floor of which housed the apartment in which he lived.

The plaintiff contended that the defendants deprived him of his constitutional rights by subjecting him to undue physical force at the time of his arrest and shortly thereafter by detaining him illegally in their patrol car. The plaintiff alleged that Officer Dainack twisted his arm and, assisted by Officer Van Houten, pushed him into the back seat of the police car. Officer Dainack, seated in the front of the car, then allegedly pulled the plaintiff by the scruff of the neck and struck him in the ribs while the plaintiff was still seated behind him. Officer Van Houten was the driver of the car. The plaintiff was detained in the patrol car a short time (five or ten minutes) and then released a short distance from his home.[1] The officers undertook no formal

who act under color of state law and who use excessive force in the enforcement of state laws are subject to civil liability under § 1983 when their actions deprive persons of rights guaranteed by the Constitution and laws of the United States. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), relied upon by the defendants, does not require a contrary conclusion.

arrest procedures because, as they testified, they became satisfied that the plaintiff was no longer dangerous to himself or to others.[2]

■ In the course of his testimony, Officer Dainack stated that shortly after the plaintiff was taken into the police car he began to cry and said to the officers, "You never give anyone a break". In order to disprove this testimony and impeach the credibility of Officer Dainack, plaintiff's counsel brought out in rebuttal testimony that the plaintiff had had frequent encounters with the State Police and had been very carefully drilled by his attorney with respect to his rights and the availability of his lawyer.[3] This testimony was admitted over the repeated objections of defense counsel. The trial court instructed the jury that this testimony did not involve cases with which the defendants were connected and was only admitted to enable the jury to determine whether it was plausible that the plaintiff would have broken down and cried as the defendants testified he did.

In summation, plaintiff's counsel exploited this testimony and attacked the credibility of the defendants in the strongest terms, both by the expression of personal opinions and by references to extraneous matters (e. g., "he lied like a trooper"). He even went so far as to state:

> In *Paul*, the Supreme Court held only that a defamation claim could not be the basis for a civil rights action because defamation did not implicate a federally-protected right. Where, as here, the plaintiff alleges an illegal arrest and detention, the guarantee of "liberty" under the Due Process Clause is clearly involved.

2. Section 240.40 of the Penal Law of New York State provides:
> "A person is guilty of public intoxication when he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity."

The law of the State of New York is—this is the Criminal Procedure Law, Section 140.20(4):
> "That if, after arresting a person for any offense, a police officer on further investigation or inquiry determines or is satisfied that there is not reasonable cause to believe that the arrested person committed such offense or any other offense, based upon the conduct in question, he need not follow any of the

This series of incidents has constituted a section of my career. I have made it possible that any hour of the night or day, seven days a week, 365 days a year, if Vincent Bellows calls me, I go at once. And I will be at the station house before the police arrive.

He further argued:

> Would a man like Bellows starting at age 17, with this state police barracks and people there, down to now 28 years of age, or down to 1972 when this occurred, be the kind of an individual who has fought them continually, be the one to say "You never gave anybody a break," and the one to cry in the car?

Toward the close of his summation, plaintiff's counsel stated:

> There are no more places we can go to stop these people. We have tried everything for 11 years. Was this an isolated instance?

These statements were made notwithstanding the Court's admonition just prior to summation that plaintiff's counsel should refrain from addressing the jury with respect to the actions of other State troopers.[4]

It was made evident from the plaintiff's evidence and the summation that the plaintiff had been involved in numerous inci-

procedures [provided above], but must immediately release such person from custody."

3. On cross-examination, defense counsel established that the plaintiff had previously brought two unsuccessful actions in the New York Court of Claims based on allegations of false arrest. On redirect, the plaintiff was permitted to testify in greater detail concerning these actions.

4. The following colloquy appears in the Transcript between the Court and plaintiff's counsel prior to summation:
> "The Court: Mr. Rosen, you understand I am not going to let you talk to the jury about a pattern of behavior by the state troopers, because there is no testimony in the record, no evidence to show that the defendants did know Bellows before.
> The only reason I allowed you to bring up the other cases was to show it was implausible that he would have cried.
> Mr. Rosen: Yes."

dents with other State troopers over a long period of time. The plaintiff exploited this background in mounting an attack not only upon the defendants themselves, but also upon the entire police force of which they were members. He endeavored to portray this incident as the culminating episode in a long history of improper police conduct for which he urged that these defendants should be made to pay substantial damages.

It is clear, therefore, that the issues of this case were improperly expanded to include matters which were not properly before the jury and which seriously prejudiced the defendants' right to a fair trial. The defendants should not have been held accountable or made to appear responsible for the actions of other police officers involved in other incidents which were totally irrelevant and prejudicial. The defendants were also deprived of a fair trial by the summation of plaintiff's counsel which sought to arouse undue passion and prejudice on the part of the jury and clearly exceeded the bounds of propriety. *Mileski v. Long Island R.R.*, 499 F.2d 1169, 1171 (2d Cir. 1974); *Koufakis v. Carvel*, 425 F.2d 892, 900–05 (2d Cir. 1970).

The defendants argue that the trial court's charge was "misleading, inadequate and erroneous". No timely objection to the charge was made, and thus the defendants must demonstrate that the Court's error, if any, was "plain, and may [have] result[ed] in a miscarriage of justice". *McNamara v. Dionne*, 298 F.2d 352, 355 (2d Cir. 1962). This Court finds no "demonstrable deviation" in the Court's instruction from the applicable law and appropriate standards, *Williams v. City of New York*, 508 F.2d 356, 362 (2d Cir. 1974), and accordingly rejects the defendants' contentions.[5]

Under the circumstances, the defendants are entitled to a new trial at which the district court is directed to maintain a firm hand with respect to the exclusion of any prior contacts between the plaintiff and other New York State troopers. In addition, the district court is directed to explain

separately the basis for liability for punitive damages of each defendant inasmuch as the general terms used in the Court's charge could not have helped the jury to make a determination, entirely justified by the plaintiff's version of the facts, that Van Houten's role was less important than that of Dainack unless they inferred a ratification on Van Houten's part of all that Dainack allegedly did. *Cf. Koufakis v. Carvel, supra,* at 905.

Reversed and remanded for a new trial.

---

5. In view of our disposition of this case, we need not consider the defendants' contentions

with respect to the awards of compensatory and punitive damages.