14-3688-bk
*In Re: Coudert Bros. LLP*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

August Term 2015

(Argued: August 20, 2015          Decided: December 29, 2015)

Docket No. 14-3688-bk

———————————————

IN RE: COUDERT BROTHERS LLP,

*Debtor*.

———————————————

STATEK CORPORATION,

*Appellant*,

v.

DEVELOPMENT SPECIALISTS, INC., Plan Administrator for Coudert Brothers LLP,

*Appellee*.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————

Before:

CABRANES, POOLER, and CHIN, *Circuit Judges*.

———————————————

Appeal from an order of the United States District Court for the Southern District of New York (Swain, *J.*), affirming orders of the United States Bankruptcy Court for the Southern District of New York (Drain, *J.*), denying appellant's motions for reconsideration of an order disallowing a claim. On appeal, appellant argues that the bankruptcy court's orders do not comply with this Court's mandate in a prior appeal in this case. Because we conclude that the bankruptcy court did not give full effect to our mandate, which impliedly foreclosed the bankruptcy court from relying on its prior alternative holding, we reverse and remand with further instructions.

REVERSED AND REMANDED.

ANTHONY W. CLARK (Thomas J. Allingham II, Dain A. De Souza, J. Eric Ivester, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, *and* New York, New York, *for Appellant Statek Corporation*

DAVID S. TANNENBAUM, Stern Tannenbaum & Bell LLP, New York, New York, *for Appellee Development Specialists, Inc.*

CHIN, *Circuit Judge*:

This case returns to us after our previous remand in *Statek Corp. v. Development Specialists, Inc.* (*In re Coudert Bros. LLP*) ("*Coudert I*"), 673 F.3d 180 (2d Cir. 2012), which in part vacated the bankruptcy court's denial of a motion to reconsider an order disallowing a claim. Appellant Statek Corp. ("Statek") appeals from a September 19, 2014 order of the United States District Court for the Southern District of New York (Swain, *J.*), which affirmed orders of the United States Bankruptcy Court for the Southern District of New York (Drain, *J.*), dated August 23, 2013, and October 25, 2013, that again, on remand, denied reconsideration. In denying Statek's latest motions for reconsideration, the bankruptcy court's decisions relied on a prior alternative holding -- that Statek's argument was a "new argument" not proper for a motion for reconsideration -- which this Court did not explicitly address in *Coudert I*.

Statek now challenges the bankruptcy court's decisions on the ground that they do not comply with our mandate in *Coudert I*. For the reasons set forth below, we remand for the district court to instruct the bankruptcy court to reverse its orders denying reconsideration, vacate its claim disallowance order, and reinstate Statek's claim.

## BACKGROUND

This dispute arises out of Statek's claim in bankruptcy against Coudert Brothers LLP ("Coudert"), a now-defunct New York law firm and debtor in bankruptcy. *See Coudert I*, 673 F.3d at 183-84. The underlying facts are set forth in detail in our prior opinion. *See id.* at 183-85. We briefly restate the allegations in Statek's complaint.

From 1984 until 1996, Statek was controlled by Hans Frederick Johnston, who looted its treasury. In 1990, Johnston caused Statek to retain Coudert as counsel, and thereafter Coudert helped him hide his pilfered assets.

After Statek removed Johnston from power, Coudert failed to turn over files and other materials relating to the Johnston years -- information to which Statek was entitled as a former client. Because of this nondisclosure, it was not until 2004 that Statek finally learned of Coudert's role in laundering Johnston's assets. Coudert's malpractice caused Statek to undergo a prolonged, global search for its assets, at a cost of $85 million.

By complaint dated October 28, 2005, Statek sued Coudert for malpractice in Connecticut state court. Coudert soon went bankrupt, and its September 22, 2006 petition for Chapter 11 bankruptcy in the Southern District of

New York automatically stayed the Connecticut action. *See* 11 U.S.C. § 362. On March 23, 2007, Statek removed the Connecticut action to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1452. And on May 10, 2007, Statek filed a proof of claim in the bankruptcy court, attaching as an exhibit the original Connecticut action complaint.

In bankruptcy, appellee Development Specialists, Inc., the plan administrator (the "Plan Administrator"), moved to disallow Statek's claim as time-barred. On July 21, 2009, the bankruptcy court granted that motion (the "Claim Disallowance Order") (Drain, *J.*). The bankruptcy court reasoned that New York choice-of-law rules applied under the *Erie* doctrine, and New York's "borrowing statute" requires claims to satisfy both the relevant New York statute of limitations and the limitations period of the state where the cause of action accrued. *See* N.Y. C.P.L.R. § 202. The bankruptcy court found that Statek did not satisfy those requirements.

Statek moved for reconsideration, arguing that the bankruptcy court had erroneously applied the *Erie* doctrine by not treating the bankruptcy court as the transferee court for the Connecticut action. *See generally Ferens v. John Deere Co.*, 494 U.S. 516 (1990) (holding federal courts follow choice-of-law rules of the

transferor court). On September 8, 2009, the bankruptcy court denied that motion, employing the Federal Rule of Civil Procedure 59(e) standard. *See* 11 U.S.C. § 502(j); Fed. R. Bankr. P. 9023 (directing application of Rule 59). The bankruptcy court reasoned that the "transferee court" argument was "never raised" before and therefore was a new argument that could not be considered on reconsideration. *In re Coudert Bros. LLP*, No. 06-12226(RDD), 2009 WL 2928911, at *2 (Bankr. S.D.N.Y. Sept. 8, 2009). Moreover, the bankruptcy court held, "the argument [was] mistaken" because Statek's claim was filed in New York and so there was no transfer. *Id.* at *3. Following Statek's appeal, the district court affirmed (Hellerstein, J.). *In re Coudert Bros. LLP*, No. 09 Civ. 9561(AKH), 2010 WL 2382397, at *4 (S.D.N.Y. June 14, 2010).

In *Coudert I*, we reversed. We first noted that we did not have subject matter jurisdiction over the Claim Disallowance Order because it was untimely appealed. *Coudert I*, 673 F.3d at 185-86 & n.6 (holding Federal Rule of Bankruptcy Procedure 8002(a)'s appeal deadline is jurisdictional). But we vacated the denial of Statek's motion for reconsideration and agreed with Statek's "transferee court" reconsideration argument. We held, on this "question of first impression," that for practical purposes the bankruptcy court was to be treated as

- 6 -

the transferee court of the Connecticut action. *Id.* at 188, 190-91. Therefore, we ruled, Connecticut choice-of-law rules applied to Statek's bankruptcy claim. We then instructed:

> The portion of the district court's order affirming the bankruptcy court's denial of Statek's motion for reconsideration is REVERSED, and the case is REMANDED to the district court with instructions to REMAND IN PART to the bankruptcy court with instructions to apply Connecticut's choice of law rules in deciding Statek's motion to reconsider.

*Id.* at 191; *see also id.* at 183 (instructing "bankruptcy court to apply the choice of law rules of Connecticut to decide Statek's motion for reconsideration"). We did not, however, specifically address the alternative holding that the "transferee court" argument has been raised for the first time on the motion for reconsideration.

On remand, the bankruptcy court ordered additional briefing on whether it could still adhere to that alternative holding. On August 19, 2013, it concluded in *In re Coudert Bros. LLP* ("*Coudert II*"), No. 06-12226(RDD), 2013 WL 4478824, at *2, *11 (Bankr. S.D.N.Y. Aug. 19, 2013), that it could. The bankruptcy court found, as an initial matter, that Connecticut choice-of-law rules pointed to Connecticut's statute of limitations. While Statek's malpractice claim would be barred by Connecticut's three-year limitations period for tort suits -- Coudert

failed to comply with Statek's requests in July 1996, and Statek sued in November 2005 -- the bankruptcy court acknowledged that Connecticut's "continuing course of conduct" doctrine possibly provided an exception. *Id.* at *4. But the bankruptcy court ultimately concluded that this doctrine "do[es] not lead to a clear answer on the timeliness of the Claim" and that there is "no manifest answer to whether the Claim should be allowed." *Id.* at *3, *8.

Instead, in *Coudert II*, the bankruptcy court held that its alternative basis for denying reconsideration -- that Statek's "transferee court" argument was a new argument -- continued to apply. *See id.* at *8-10. In so concluding, the bankruptcy court determined that relying on its prior alternative holding complied with our mandate in *Coudert I*. *See id.* at *11-13.

After *Coudert II*, Statek asked for reconsideration once again, requesting that the bankruptcy court reconsider *Coudert II* and lift the stay of the Connecticut action so that Statek could amend its claim to plead additional facts relevant to the "continuing course of conduct" doctrine. On October 25, 2013, the bankruptcy court denied that motion. On September 23, 2014, the district court affirmed both denials of reconsideration for substantially the reasons relied on by

the bankruptcy court (Swain, *J.*).  *See In re Coudert Bros. LLP*, No. 13-CV-8578-LTS-FM (S.D.N.Y. Sept. 19, 2014).

This appeal followed.

## *DISCUSSION*

When reviewing a bankruptcy court decision that was appealed to a district court, we "review the bankruptcy court's decision independent of the district court's review." *Coudert I*, 673 F.3d at 186.  Typically, "[a] bankruptcy court's denial of a motion to reconsider a disallowed claim is a discretionary decision." *Id.*  "Here, however, that discretion was cabined by the mandate" in *Coudert I*.  *Puricelli v. Republic of Argentina*, 797 F.3d 213, 218 (2d Cir. 2015).  A lower court has "no discretion in carrying out the mandate." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992).  We therefore review *de novo* "whether the judgment comports with [the] mandate." *Carroll v. Blinken*, 42 F.3d 122, 126 (2d Cir. 1994).

On appeal, Statek primarily argues that the bankruptcy court's decisions on remand ran afoul of our mandate in *Coudert I*.  The "mandate rule" has existed since the "earliest days" of the judiciary.  *Briggs v. Pa. R.R. Co.*, 334

- 9 -

U.S. 304, 306 (1948).  By that rule, a lower court "must follow the mandate issued

by an appellate court."  *Puricelli*, 797 F.3d at 218.

In following a mandate, the lower court must carry out its duty to

give the mandate "full effect."  *Ginett v. Comput. Task Grp., Inc.*, 11 F.3d 359, 360-61

(2d Cir. 1993) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)); *see*

*United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 325 (1961) (concluding

mandate must be "scrupulously and fully carried out").  The lower court "cannot

vary it, or examine it for any other purpose than execution; or give any other or

further relief; or review it, even for apparent error, upon any matter decided on

appeal; or intermeddle with it, further than to settle so much as has been

remanded."  *In re Sanford*, 160 U.S. at 255; *accord Vendo Co. v. Lektro-Vend Corp.*, 434

U.S. 425, 427-28 (1978).

But the mandate is controlling only "as to matters within its

compass."  *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599,

606 (2d Cir. 2003) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).

When the mandate leaves issues open, the lower court may dispose of the case

on grounds not dealt with by the remanding appellate court.  *See Ex parte Century*

*Indem. Co.*, 305 U.S. 354, 355-56 (1938) (finding no error that lower court "found

another ground for its action, -- a ground not dealt with in its former ruling and not presented" by the first appeal); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (finding no violation where lower court addressed "on remand an issue that was not decided by this Court in the original appeal," that "[t]he [original] appeal did not raise," and that was developed through further discovery). *But see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270-71 (2d Cir. 2012) ("Here, both the 'specific dictates of the mandate' and the 'spirit of the mandate' focus entirely on the question of timely adjudication . . . . It is not reasonable to construe the mandate as allowing alternative, dispositive bases . . . to be raised for the first time on remand . . . ."). We therefore must examine the scope of our mandate in *Coudert I*.

The scope of a mandate may extend beyond express holdings, and precludes relitigation both of "matters expressly decided by the appellate court" and of "issues impliedly resolved by the appellate court[]." *Sompo Japan*, 762 F.3d at 175 (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012)). A mandate, therefore, may expressly dispose of certain issues raised on appeal, or if the disposition of an issue is "necessarily implied" by our decision, a mandate

may also foreclose such an issue from being considered by the lower court. *Sprague*, 307 U.S. at 168.

A mandate may also, by its terms, further "limit[] issues open for consideration on remand." *Puricelli*, 797 F.3d at 218. Of course, "where a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions." *Id.* (citing 18B Charles Alan Wright, et al., *Federal Practice and Procedure* § 4478.3, at 753-54 (2d ed. 2002) [hereinafter "Wright & Miller"]). But the inquiry is broader. The district court must follow "both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)); *see Himely v. Rose*, 9 U.S. (5 Cranch) 313, 316 (1809) (Marshall, *C.J.*) (asking "whether [mandate] has been executed according to its true intent and meaning").

Far from giving full effect to our mandate in *Coudert I*, the bankruptcy court here essentially gave it no legal effect. In *Coudert I*, we instructed the bankruptcy court "to apply Connecticut's choice of law rules in deciding Statek's motion to reconsider." 673 F.3d at 191. The bankruptcy court

did not follow that instruction, as the Connecticut choice-of-law rules did not bear on the bankruptcy court's ultimate decision. Instead, the bankruptcy court ordered further briefing on whether it could adhere to its prior alternative holding that Statek's argument was a new argument not available on reconsideration. The bankruptcy court concluded that it could, and disposed of the case on that basis. *See Coudert II*, 2013 WL 4478824, at \*8-10.

While the bankruptcy court did address Connecticut's choice-of-law rules, its decision fell short of *applying* them -- it merely *considered* them. The bankruptcy court conducted an analysis of the Connecticut statute of limitations, which operated through Connecticut's choice-of-law rules. *Id* at \*3-8. Those timeliness rules, the bankruptcy court supposed, led to no "clear answer." *Id.* at \*3, \*8. The bankruptcy court erred, however, by not pursuing the Rule 59 inquiry further. *See E. I. du Pont*, 366 U.S. at 325 (holding mandate must be "scrupulously and fully carried out"). The absence of a "clear answer" was no reason to abandon the issue to be decided pursuant to the mandate.

What impelled the bankruptcy court's decision was instead its prior alternative holding. The bankruptcy court reasoned that even if a full inquiry into the Connecticut statute of limitations "could possibly have changed the

outcome of the case," it would not matter, because the bankruptcy court "'should not be required to respond to new arguments now.'" *Coudert II*, 2013 WL 4478824, at *10 (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06 Civ. 2692(KMW)(RLE), 2009 WL 1514310, at *3 (S.D.N.Y. May 29, 2009)). Indeed, the bankruptcy court hypothesized that application of the Connecticut statute of limitations *would* change the outcome of the Claim Disallowance Order because there were "insufficient grounds to grant the motion to [disallow]." App. at 828. By the bankruptcy court's analysis, it seems, the proper application of Connecticut choice-of-law rules would have required reconsidering and vacating its Claim Disallowance Order. In relying on a prior alternative holding, the bankruptcy court failed to effectuate *Coudert I*'s mandate.

We must consider, then, whether the scope of the mandate was so narrow as to permit the bankruptcy court to dispose of the case in this manner, that is, by relying on a prior alternative holding. We did not expressly address in *Coudert I* the merits of whether Statek's "transferee court" argument was a new argument cognizable on reconsideration. Nonetheless, we impliedly foreclosed that ground of decision in *Coudert I*.

- 14 -

As a general matter, it is an uncompromising rule that lower courts may not hear "arguments . . . that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11C Wright & Miller § 2810.1, at 127-28). This Court also "[g]enerally . . . will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003). But this rule, for us, is not absolute; it exists as a matter of "prudence." *Id.* (quoting *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) (providing exceptions)).

It follows that when we *do* consider on appeal arguments raised for the first time below in a motion for reconsideration and remand on the basis of those arguments, the lower court must follow our mandate. *See, e.g.*, *Wojtowicz v. United States*, 550 F.2d 786, 790 (2d Cir. 1977) (remanding for competency hearing despite competence being raised for first time in motion for reconsideration). In other words, if we elect to consider a new argument on appeal, on remand the lower court may not ignore our ruling on the basis that we relied on a non-cognizable "new argument." By remanding in this case, we necessarily implied

that Statek's "transferee court" argument should not be disregarded as a "new argument."

In *Coudert I*, we addressed at length whether Connecticut choice-of-law rules would apply. 673 F.3d at 186-91. That question was *Coudert I*'s overwhelming focus. *See Parmalat*, 671 F.3d at 270-71 (finding when mandate "focus[es] entirely on [one] question" other "alternative, dispositive bases" are "'impliedly decided'"). If we thought an alternative, dispositive holding would altogether preclude application of Connecticut's choice-of-law rules, "we would have affirmed . . . ; there would have been no need for a [remand]." *Kerman v. City of New York*, 374 F.3d 93, 111 (2d Cir. 2004); *see also Parmalat*, 671 F.3d at 270-271. Indeed, we were fully aware of the bankruptcy court's alternative holding and could have adopted it -- but we did not. *See Coudert I*, 673 F.3d at 186 (noting that we "review the bankruptcy court's decision independent of the district court's review"). Accordingly, we conclude that the bankruptcy court's "new argument" holding in *Coudert II* was impliedly foreclosed by our mandate in *Coudert I*.

The Plan Administrator's arguments to the contrary are unavailing. First, the Plan Administrator argues that because *Coudert I* instructed the

bankruptcy court to "decide" the motion for reconsideration, the mandate left open all other grounds of decision. 673 F.3d at 183, 191. Because we asked for a decision by the bankruptcy court, the Plan Administrator contends, we impliedly decided nothing. The Plan Administrator's interpretation reads out other words from our decree -- notably, "to apply." As we discussed, we must have impliedly decided enough so that our instructions would be given some legal effect.[1] In any event, we have found implied decisions where the instruction was more general than the one in *Coudert I*. *See, e.g.*, *Kerman*, 374 F.3d at 109-111, *vacating* No. 96 Civ. 7865(RPP), 2003 WL 328297 (S.D.N.Y. Feb. 11, 2003), *remanded from* 261 F.3d 229 (2d Cir. 2001) ("remand[ing] for further proceedings not inconsistent with this opinion"); *see also* Fed. R. App. P. 41(a) (dictating that mandate includes full opinion).

---

[1]     The Plan Administrator further contends that "if the Court of Appeals believed that the reconsideration motion was already decided, it would not have given the Bankruptcy Court this explicit instruction" to decide the motion. Appellee's Br. at 34. But the reconsideration motion was *not* entirely decided by *Coudert I*, even if the "new argument" *was*. The bankruptcy court could have decided (but did not) that the Connecticut statute of limitations offered no possible recourse under the facts pleaded and denied the motion for reconsideration on those grounds. *See, e.g.*, *United States v. Clark*, 984 F.2d 31, 34 (2d Cir. 1993) (finding no abuse of discretion where lower court "explicitly considered [the motion for reconsideration's] merits and denied it").

Second, the Plan Administrator invokes a countervailing rule derived from the related law-of-the-case doctrine.[2] The Plan Administrator contends that the bankruptcy court correctly adhered to its original ruling on the "new argument" issue, which is the "law of the case." *See generally Burrell v. United States*, 467 F.3d 160, 165 n.3 (2d Cir. 2006) (discussing "major grounds" for "depart[ing] from the sound policy of adhering to [a] prior ruling"). But this rule only operates "in the absence of an intervening ruling on the issue by a higher court." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Here, *Coudert I* was that intervening ruling by a higher court.

Third, and finally, the Plan Administrator argues that because the "new argument" issue was not "squarely presented" to us in *Coudert I*, we could not have impliedly decided it. Though the doctrines are related, this argument mistakes the requirements of the mandate rule with waiver. *See* 18B Wright & Miller § 4478.6, at 821 (3d ed. 2012) (explaining difference between "law of the case" and "forfeiture" or "waiver"). Our mandate impliedly decides at least enough issues to allow it to be effective, even if not all issues are made explicit. *See Ginett*, 11 F.3d at 360-61; *see, e.g.*, *Parmalat*, 671 F.3d at 270-71 (rejecting as

---

[2]     Though our Court has long considered the mandate rule as a branch of the law-of-the-case doctrine, *see, e.g.*, *Sompo Japan*, 762 F.3d at 175, those doctrines are not, strictly speaking, one and the same.

impliedly decided "alternative, dispositive bases" not raised in prior appeal); *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (finding "factual predicates of . . . claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate"); *Burrell*, 467 F.3d at 165 (holding mandate impliedly decides that resentencing *de novo* usually required when it reverses a conviction and remands for resentencing); *Kerman*, 374 F.3d at 109-11 (finding existence of "clearly established right" impliedly decided though it was not raised).

Of course, in some cases, this Court chooses to expressly address alternative holdings, and in other cases, we state that we express no view on them, leaving those alternatives open for the lower court to reconsider. *See, e.g., Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 374 Fed. App'x 71, 74 (2d Cir. 2010) (finding prior mandate limited scope by stating it "express[ed] no view" on other issues); *see also United States v. Johnson*, 378 F.3d 230, 240 (2d Cir. 2004) ("The general mandate rule can be avoided by specific instructions . . . ."). In this case, we did not include any such express language, and, indeed, our mandate was clear enough: The bankruptcy court was instructed to *apply* Connecticut law. It did not do so.

Because we determine that the bankruptcy court derogated from our mandate in *Coudert I*, we consider the appropriate instructions on remand. Generally, "the appellate court retains the right to control the actions of the [lower] court where the mandate has been misconstrued or has not been given full effect." *Ginett*, 11 F.3d at 360-61. We fashion instructions to give *Coudert I* that effect.

It is clear that the bankruptcy court would have vacated the Claim Disallowance Order had it not misconstrued our mandate. During a hearing, the bankruptcy court concluded that Statek pleaded sufficient facts to overcome the Plan Administrator's motion to disallow the claim. The bankruptcy court stated:

> [N]ow that I'm instructed to apply Connecticut Choice of Law principles I would conclude that under Connecticut law, I would apply the Connecticut limitations law, not some other jurisdiction's limitation law. And further, I would conclude that there is insufficient or are insufficient grounds to grant the motion to [disallow] because of the facts necessary to decide the tolling for continuing conduct.

App. at 828. In its written decision, the bankruptcy court reiterated that the facts in the record did not lead to a "clear answer" sufficient to permit it to rule on the timeliness issue in the Plan Administrator's favor. *Coudert II*, 2013 WL 4478824, at *3. The bankruptcy court should have, by its finding that there were

- 20 -

insufficient grounds to grant a motion to disallow without further facts, reversed its orders denying reconsideration and vacated the Claim Disallowance Order. Statek should have been allowed to proceed with its claim.

## *CONCLUSION*

For the foregoing reasons, the district court's order affirming the August 23, 2013 and October 25, 2013 orders of the bankruptcy court is **REVERSED**, and the case is **REMANDED** to the district court with directions to **REMAND** to the bankruptcy court with instructions to: (1) reverse its orders denying reconsideration, (2) vacate the Claim Disallowance Order, (3) reinstate Statek's claim, and (4) permit further proceedings in a manner consistent with this opinion.