16-1258-cv
*Imani Brown v. City of NY*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

——————————

August Term, 2016

(Argued: March 10, 2017                    Decided: July 5, 2017)

Docket No. 16-1258-cv

——————————

IMANI BROWN,

*Plaintiff-Appellant,*

v.

CITY OF NEW YORK, a municipal entity, JUSTIN NAIMOLI, New York City Police Officer, Shield 26063, in his individual capacity, THEODORE PLEVRITIS, in his individual capacity,

*Defendants-Appellees.*

——————————

Before:

JACOBS and DRONEY, *Circuit Judges*, and STANCEU, *Judge.**

——————————

Appeal of judgment for defendants entered by the U.S. District Court for the Southern District of New York (Forrest, *Judge*) in an action claiming false arrest,

---

* Timothy C. Stanceu, Chief Judge, United States Court of International Trade, sitting by designation.

unnecessary use of force, and First Amendment retaliation. Because the District Court did not err in granting defendants' motion for summary judgment on the ground of qualified immunity, the judgment is AFFIRMED.

—————————

JOSHUA S. MOSKOVITZ, Beldock Levine & Hoffman LLP, New York, NY, *for Plaintiff-Appellant*.

DEVIN SLACK (Richard Dearing and Julie Steiner, *on the brief)*, Zachary W. Carter for Corporation Counsel of the City of New York, *for Defendants-Appellees*.

—————————

STANCEU, *Judge*:

Plaintiff-appellant Imani Brown appeals an April 21, 2016 judgment of the

United States District Court for the Southern District of New York ("District Court")

(Forrest, *Judge*) in favor of defendants Justin Naimoli and Theodore Plevritis, New York

City police officers, on her federal and state law claims of excessive force stemming

from her arrest on November 15, 2011. The District Court granted defendants' motion

for summary judgment on the federal claims on the ground of qualified immunity and

dismissed the state law claims. We affirm the judgment of the District Court.

**BACKGROUND**

Brown brought this action on February 13, 2013 in the District Court against the

City of New York, and against defendants Naimoli and Plevritis in their individual

capacities, following her arrest near Zuccotti Park in lower Manhattan. She asserted

Fourth Amendment claims for false arrest and excessive use of force, and a First Amendment retaliation claim, under 42 U.S.C. § 1983 and also brought parallel claims under New York state law.  In its first dispositive decision, the District Court granted summary judgment for defendants on all of Brown's § 1983 claims and dismissed the state law claims on jurisdictional grounds.  *Brown v. City of New York*, No. 13-cv-1018, 2014 WL 2767232 (S.D.N.Y. June 18, 2014) (*"Brown I"*).  On Brown's first appeal, this Court vacated the judgment entered by the District Court as to the excessive force claims and affirmed the judgment as to all other claims before it.  *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015) (*"Brown II"*).  Brown did not appeal the District Court's judgment with respect to any of her claims against the City of New York.  *Id.* at 95.  On remand, the District Court awarded summary judgment to defendants Naimoli and Plevritis on the § 1983 excessive force claims, holding that qualified immunity insulated these officers from liability, and dismissed the remaining state law claims.  *Brown v. City of New York*, 13-cv-1018, 2016 WL 1611502 (S.D.N.Y. Apr. 20, 2016) (*"Brown III"*).

**DISCUSSION**

Because this Court affirmed the District Court's disposition of all of Brown's claims except the excessive force claims, as to which the judgment of the District Court was vacated, *see Brown II*, 798 F.3d at 95, the only claims remaining in this litigation are the excessive force claims brought under 42 U.S.C. § 1983 and under state law.  Further, because Brown did not appeal the District Court's final decision on any of her

3

claims against the City of New York, *id.*, the only claims remaining are the excessive force claims brought against Officers Naimoli and Plevritis in their individual capacities.

Brown raises three arguments on appeal. Pointing to language in this Court's opinion in *Brown II* remanding the case "for trial," she argues, first, that under this Court's mandate the District Court was required to hold a trial and, therefore, lacked discretion on remand to grant summary judgment. Second, she argues that the two defendant police officers waived any defense of qualified immunity. Finally, she argues that the District Court erred on the merits in holding that qualified immunity shielded the officers from liability.

We determine *de novo* the meaning of a previous mandate of this Court. *Carroll v. Blinken*, 42 F.3d 122, 126 (2d Cir. 1994). In doing so, we reject Brown's first argument, i.e., that the mandate required the District Court to preside over a trial rather than resolve the excessive force claims on a second summary judgment motion.

Plaintiff-appellant's argument relies on language in the opinion in *Brown II* stating that Brown's claim against the officers "for use of excessive force must be remanded for trial," *Brown II*, 798 F.3d at 95, that "[t]he assessment of a jury is needed in this case," and that "a jury will have to decide whether Fourth Amendment reasonableness was exceeded . . . ," *id.* at 103. Brown interprets this language as a directive to the District Court to conduct an actual trial, but this interpretation fails to

4

construe the references to a "trial" and a "jury" in the context of the issue this Court was deciding. That issue was whether the District Court erred in granting summary judgment to defendants on the ground that the force used in arresting Brown was not excessive. In considering the issue of whether excessive force was used, this Court applied the "objective reasonableness" standard as explicated in *Graham v. Connor*, 490 U.S. 386, 392 (1989). The references to "trial" and "a jury" in the opinion are properly understood in the context of the requirements a movant must meet to obtain summary judgment. *See* Fed. R. Civ. P. 56(a) (requiring movant to show absence of a genuine issue of material fact and entitlement to judgment as a matter of law). On the record before it in *Brown II*, this Court viewed the question of whether the force used in arresting Brown was reasonable under the *Graham* factors as a question to be decided by a jury rather than by the trial court on a summary judgment motion. *Brown II*, 798 F.3d at 102-03.

As the opinion in *Brown II* explained, the objective reasonableness standard governs whether the force an officer used to make an arrest was excessive and therefore in violation of rights protected by the Fourth Amendment. *Brown II*, 798 F.3d at 100 ("The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's '"reasonableness" standard.'" (citing *Graham*, 490 U.S. at 395)). The *Brown II* opinion discussed the three factors the Supreme Court identified specifically, i.e., severity of the

5

crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.* (citing *Graham*, 490 U.S. at 396). The District Court erred, this Court concluded in *Brown II*, because "[a]n aggregate assessment of all three relevant *Graham* factors would seem to point toward a determination of excessive force and, at a minimum, to preclude a ruling against the victim on a motion for summary judgment." *Id.* at 102 (footnote omitted).

Following this Court's vacatur of the judgment the District Court entered in *Brown I*, the excessive force claims on remand reverted back to the prior, pre-trial status. A trial court generally must have discretion to rule on matters prior to presiding over an actual trial, including dispositive motions, and an appellate court vacating an award of summary judgment ordinarily would not confine the discretion of a district court as to how to proceed from that point unless doing so was necessary to correct the error determined to have occurred below. Here, a trial was not necessary to correct the error the District Court was held to have committed. That error was corrected by vacating the summary judgment disposing of the § 1983 excessive force claims against the two officers on the ground that excessive force was not used in Brown's arrest. Consistent with the mandate, the District Court was not free to entertain a second summary judgment motion on the same ground, but it was not constrained from considering a second summary judgment motion raising the issue of whether the § 1983 excessive

force claims were defeated by qualified immunity, an issue that neither *Brown I* nor *Brown II* decided. Therefore, we decline to interpret the *Brown II* mandate to have required a trial on the issue of objective reasonableness under the *Graham* standard. The District Court retained its ordinary, and necessary, discretion to manage the remainder of the litigation consistent with the mandate, which addressed only the question of the reasonableness of the force used by the officers, not the question of qualified immunity.

Brown argues that the issue of qualified immunity, if not explicitly decided, was "implicitly" decided in the previous appeal, maintaining that "[i]t was not necessary for this Court to expressly address qualified immunity for that issue to be subsumed in the mandate and foreclosed on remand." Br. for Pl.-Appellant with Special App. 19 (Aug. 12, 2016), ECF No. 32 ("Pl.-Appellant's Br."). The District Court concluded in *Brown III* that the issue of qualified immunity was not implicitly decided in *Brown II*, and we agree. *Brown II* mentioned the qualified immunity defense in analyzing plaintiff-appellant's false arrest claims, *see* 798 F.3d at 99, but it did not do so in addressing the excessive force claims. As to the latter claims, we can be sure that *Brown II* did not intend to rule on them implicitly: the issue was not decided in the District Court's initial opinion, it was not argued on appeal, and *Brown II* never addresses it. Instead, *Brown II* confines its analysis to the issue of objective reasonableness under the Fourth Amendment standard of *Graham*. Notably, *Graham*

7

did not involve the question of qualified immunity of police officers. 490 U.S. at 399 n.12 ("Since no claim of qualified immunity has been raised in this case, . . . we express no view on its proper application in excessive force cases that arise under the Fourth Amendment.").

What is more, the District Court's disposition of the excessive force claims that was before this Court in *Brown II* did not require this Court to decide whether qualified immunity applied. In granting summary judgment on the excessive force claims in *Brown I*, the District Court disposed of the § 1983 excessive force claims against the City of New York (a disposition that became final when it was not appealed), in addition to those against the two officers in their individual capacities, by concluding that the officers did not use excessive force. Having done so, the District Court had no need to consider whether the doctrine of qualified immunity protected the two individual defendants from liability. Under the District Court's holding in *Brown I*, the two officers could not be liable to Brown in their individual capacities for damages arising from a violation of the Fourth Amendment prohibition against excessive use of force that the District Court held not to have occurred.

Arguing that the District Court erred in failing to follow the mandate in *Brown II*, plaintiff-appellant relies on *Statek Corp. v. Dev. Specialists, Inc.* (*In Re Coudert Bros. LLP*), 809 F.3d 94 (2d Cir. 2015) (*"In Re Coudert Bros."*). She relies, further, on *Puricelli v. Argentina*, 797 F.3d 213 (2d Cir. 2015), for the principle that "where a mandate directs a

district court to conduct specific proceedings . . . , generally the district court must conduct those proceedings . . . ." Pl.-Appellant's Br. 19 (quoting *Puricelli*, 797 F.3d at 218).

*In Re Coudert Bros.* is not on point. In that case, a bankruptcy court expressly was instructed "'to apply Connecticut's choice of law rules in deciding Statek's motion to reconsider.'" 809 F.3d at 99 (citation omitted). Noting that the bankruptcy court did not do so, this Court concluded that "[f]ar from giving full effect to our mandate . . . , the bankruptcy court here essentially gave it no legal effect." *Id.* When we consider the context of the vacatur of the summary judgment and the ordering of further proceedings, we cannot conclude that *Brown II* expressly or unambiguously ordered the District Court to conduct a trial on the issue of whether the force used in arresting Brown was excessive under Fourth Amendment standards. In response to the vacatur of the summary judgment, the District Court conducted appropriate further proceedings. It would be incorrect, therefore, to conclude that the District Court gave "no legal effect" to the mandate in *Brown II*.

Because *Brown II* did not expressly direct the District Court to hold a trial on remand, *Puricelli* is also distinguishable from this appeal. In *Puricelli*, this Court specifically directed that "on remand, the district court shall conduct an evidentiary hearing to resolve" certain specified factual issues pertaining to awards of damages in class action suits to recover on defaulted government bonds. 797 F.3d at 217 (*quoting*

9

*Hickory Sec. Ltd. v. Republic of Argentina*, 493 Fed. Appx. 156, 160 (2d Cir. 2012)). Rather than follow that mandated procedure, the district court modified the class definitions and granted new class certifications. *Id.* This Court held in *Puricelli* that the mandate in question "gave the District Court specific instructions that did not permit expanding the plaintiff classes." *Id.* at 218.

In summary, *Brown II* did not rule, explicitly or implicitly, on the issue of qualified immunity and is not properly interpreted to have required the District Court to conduct a trial on whether excessive force was used in arresting Brown. We hold, therefore, that the District Court did not err in considering a motion for summary judgment on the qualified immunity issue.

Plaintiff-appellant's second argument is that Naimoli and Plevritis waived their qualified immunity defense, first by raising it in only a "half-sentence argument" in support of their summary judgment motion before the last appeal, and again by failing to raise it in the last appeal. Pl.-Appellant's Br. 23. Brown argues that in their original summary judgment motion, defendants argued, only summarily, that "the officers are entitled to qualified immunity as it was reasonable under the circumstances for the officers to use the force shown." *Id.* at 23-24 (citing Mem. of Law in Supp. of Defs.' Mot. for Summ. J. at 17, *Brown I*, 2014 WL 2767232 (No. 13-cv-1018)). She submits that "[t]his contention does not argue that the law was not clearly established, nor that reasonable officers could be unsure whether the force employed was unconstitutional." *Id.* at 24.

Further, Brown argues that defendant-appellees' failure to raise qualified immunity on appeal in *Brown II* is "a concession that they had not properly raised it in the court below" and that this failure, in any event, waived the qualified immunity defense. *Id.* at 25.

The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived. *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012) ("A district court's determination that a party has not waived an argument by raising it earlier is reviewed for abuse of discretion" (citing *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005))). The District Court reasoned that Naimoli and Plevitis did not waive the qualified immunity defense because they "pled the defense in the Answer, raised it specifically as to the excessive force claim in the first summary judgment motion, and raised it again on summary judgment now." *Brown III*, 2016 WL 1611502 at *5 n.6. It also reasoned that the "quality of the argument in defendant's briefing does not here serve as a proper basis for a waiver." *Id.* Applying an abuse of discretion standard, we do not find error in the District Court's deciding that the officers did not waive the qualified immunity defense.

In arguing that the defendant officers inadequately raised the issue in their summary judgment motion, Brown relies on *Blissett v. Coughlin*, 66 F.3d 531

11

(2d Cir. 1995), and *McCardle v. Haddad*, 131 F.3d 43 (2d Cir. 1997). This reliance is misplaced.

Plaintiff-appellant characterizes *Blissett* and this case as involving "similar circumstances." Pl.-Appellant's Br. 24. We disagree. In *Blissett*, this Court affirmed a district court's ruling that the defense of qualified immunity had been waived where the defendants, although having "raised a general immunity defense in their answer" to the complaint, "did not raise the issue of qualified immunity during the subsequent five years of pre-trial proceedings," 66 F.3d at 538, and even at trial "never articulated a qualified immunity defense distinct from the contention—the heart of their defense throughout these proceedings—that no constitutional violation occurred." *Id.* at 539. Here, the officers raised the defense of qualified immunity during pre-trial proceedings, in their first motion for summary judgment before the District Court.

*McCardle*, which also affirmed a district court's ruling that the qualified immunity defense was waived, is inapposite as well. In *McCardle*, the defendant included the qualified immunity defense in its answer but made no motion for summary judgment on that basis nor showed that he had raised it in any pretrial motion, discovery, or court conference. 131 F.3d at 52. The defendant in *McCardle* raised the qualified immunity defense at the close of his case at trial as to one claim against him, but not as to another, and he did so in an improper motion. *Id.*

12

We next consider Brown's argument that the officers waived their qualified immunity defense by failing to argue it before this Court in the prior appeal. Concluding that the District Court did not abuse its discretion in ruling otherwise, we reject this waiver argument as well.

The role of the appellee is to defend the decision of the lower court. This Court has not held that an appellee is required, upon pain of subsequent waiver, to raise every possible alternate ground upon which the lower court could have decided an issue. *See Universal Church v. Geltzer*, 463 F.3d 218, 229 (2d Cir. 2006) (stating, in the analogous context of an appeal to a district court from a bankruptcy court, that "[a]lthough it behooves appellees to raise all their defenses on appeal because the appellate court can affirm on any basis supported by the record, even one not relied on by the lower court, *Pollara v. Seymour*, 344 F.3d 265, 268 (2d Cir. 2003), we are not aware of any case requiring them to do so."). For its argument to the contrary, Brown relies in part on *United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002), but that case is not on point. *Quintieri* involved successive appeals by appellant Carlo Donato of a criminal sentence and a remand for resentencing that this Court concluded was a limited, not a *de novo*, resentencing remand. This Court held that "[b]ecause the remand was limited, Donato may not now raise arguments that he had an incentive and an opportunity to raise previously but did not raise, absent a cogent and compelling reason for permitting him to do so." *Id*. at 1225. Donato, notably, was the appellant, not the appellee, and the

13

holding in *Quintieri* as to the limited scope of the resentencing remand establishes no rule or principle relevant to this appeal of a civil judgment. Brown also argues that allowing the defense of qualified immunity in *Brown III* was error because qualified immunity is to be resolved at the earliest possible stage in litigation and because permitting "this type of piecemeal litigation will waste tremendous resources." Pl.-Appellant's Br. 26. According to Brown, the wastefulness results from "two *de novo* appellate reviews of the same record" and "[a]ll of this can be avoided in the future if the Court strictly enforces its mandate and remands for trial." *Id.* at 27. Resolving the qualified immunity defense at an early stage furthers the rule that qualified immunity insulates a defendant officer from suit as well as shielding him from liability. *See Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016). This rule, which benefits defendant officers, does not translate to an obligation of an appellee in the situation of Naimoli and Plevritis to have raised the defense of qualified immunity when as appellees they were arguing for affirmance of the judgment below, which was based on a different ground. Nor do we find merit in Brown's argument concerning "piecemeal litigation." Avoiding the "piecemeal litigation" as posited by plaintiff-appellant is not a valid reason for disturbing the legitimate exercise of discretion by the District Court on the question of waiver.

We next consider Brown's argument that the District Court, on the merits, impermissibly awarded summary judgment to Naimoli and Plevritis on the ground of

14

qualified immunity.  We review a summary judgment award *de novo,* with all evidence viewed in the light most favorable to the nonmoving party and all reasonable inferences drawn in that party's favor.  *See Okin v. Vill. of Cornwall–on–Hudson Police Dep't,* 577 F.3d 415, 427 (2d Cir. 2009); *Russo v. City of Bridgeport,* 479 F.3d 196, 203 (2d Cir. 2007).  Summary judgment is warranted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).

This Court's opinion in *Brown II* summarized a number of undisputed facts material to Brown's excessive force claim.  The two officers "were arresting Brown for disorderly conduct, a violation that[,] under New York law, is subject to a maximum punishment of 15 days in jail."  *Brown II*, 798 F.3d at 101.  "Officer Plevritis was 5' 10"" and weighed 215 pounds; Officer Naimoli was 5' 7" and weighed 150-160 pounds; Brown was 5' 6" and weighed 120 pounds."  *Id.*  "Officer Plevritis asked Brown to place her hands behind her back so that they could apply handcuffs, and she refused to do so."  *Id.*  "One of the officers kicked Brown's legs out from under her, causing her to fall to the ground."  *Id.*  "One officer succeeded in placing handcuffs on Brown's right wrist."  *Id.*  "Both officers struggled with Brown, forcing her body to the ground."  *Id.*  "Officer Plevritis used his hand to push Brown's face onto the pavement."  *Id.*  "Brown's left arm, without a handcuff, was under her as she fell to the ground."  *Id.*  "The officers endeavored to take hold of Brown's left arm and bring it behind her to complete the

15

handcuffing." *Id.* "While on the ground, Brown did not offer her arms for handcuffing in part because she was trying to keep hold of her phone and wallet and reach for the scattered contents of her purse." *Id.* "Officer Plevritis twice administered a burst of pepper spray directly to Brown's face." *Id.* "The officers completed the handcuffing while Brown was still on the ground." *Id.* "Officer Naimoli was aware of techniques for applying handcuffs to a reluctant arrestee, other than taking a person to the ground." *Id.*

The District Court relied upon these same uncontested facts in granting the summary judgment motion in *Brown III*. *Brown III*, 2016 WL 1611502, at *3. The District Court identified as an additional uncontested fact that "[d]uring the time that plaintiff was refusing to comply with the officers' instructions, and prior to each administration of pepper spray, the officer informed plaintiff that she would be sprayed." *Id.* at *2 n.3 (citations omitted). The District Court added that it is "also undisputed that the New York City Police Department Patrol Guide requires that pepper spray be used in 'two (2) one second bursts, at a minimum distance of three (3) feet, and only in situations when the uniformed member of the service reasonably believes it is necessary to . . . [e]ffect an arrest, or establish physical control of a subject resisting arrest.'" *Id.* at *2 (quoting New York City Patrol Guide, Procedure No. 212-95 (Jan. 1, 2000)).

The District Court recited two contested facts from the *Brown II* opinion, each of which it construed in favor of Brown for purposes of ruling on the summary judgment

motion: "According to Brown, the pepper spray was administered one foot away from her face[] (Officer Plevritis claims the first dose was from two feet away and the second dose was from three feet away[])," and "[a]ccording to Brown, she was trying to use her free arm to pull down her skirt, which was exposing her behind." *Id.*

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Id.* at 664 (citing *al-Kidd*, 563 U.S. at 741) (quotations omitted). Controlling authority serves to put officials on notice of what is unlawful; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

On the uncontested facts and the two facts that it presumed in Brown's favor, the District Court held that the officers were shielded from liability by their qualified immunity. We agree. As instructed by the Supreme Court, we are "not to define clearly established law at a high level of generality," *al-Kidd*, 563 U.S. at 742 (citations omitted), and we consider, as we must, the particular circumstances in which the force was used in effecting Brown's arrest. The force applied, which was the repeated use of pepper spray, the kicking of Brown's legs out from under her to bring her to the

17

ground, and Plevritis's using his hand to push Brown's face onto the pavement, occurred after Brown refused to comply with the instructions to place her hands behind her back for handcuffing. During her noncompliance with the instructions, she was warned prior to each application of the pepper spray. The issue presented, therefore, is whether, under clearly established law, every reasonable officer would have concluded that these actions violated Brown's Fourth Amendment rights in the particular circumstance presented by the uncontested facts and the facts presumed in Brown's favor. Here, those circumstances involved a person's repeatedly refusing to follow the instructions of police officers who were attempting to apply handcuffs to accomplish an arrest.

No precedential decision of the Supreme Court or this Court "clearly establishes" that the actions of Naimoli or Plevritis, viewed in the circumstances in which they were taken, were in violation of the Fourth Amendment. The excessive force cases on which Brown relies do not suffice for this purpose.

Brown first directs our attention to *Robison v. Via*, 821 F.2d 913 (2d Cir. 1987), a decision vacating a district court's summary judgment award in favor of a defendant state police officer on a § 1983 claim. Summary judgment in favor of the officer was not proper, this Court held, due to the plaintiff's testimony that the officer "'pushed' her against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back.'" *Id.* at 923-24. The plaintiff also

18

"testified that she suffered bruises lasting a 'couple weeks.'" *Id.* The case is inapposite in key respects. The alleged force was more severe than that presented here, and the opinion in *Robison* does not state that the police officer exerted physical force to overcome resistance to arrest. To the contrary, no arrest was attempted, and the force was applied while the officer sought to prevent the plaintiff's interfering with her children's removal from her custody. *See id.* at 916-17.

Brown next cites *Bellows v. Dainack*, 555 F.2d 1105 (2d Cir. 1977), in which the plaintiff contended that defendant police officers twisted his arm and pushed him into a police car; he further alleged that an officer in the front seat pulled him by the scruff of his neck and struck him in the ribs while the plaintiff was sitting in the back seat. *Id.* at 1106. These allegations are not analogous to the force used against Brown, if for no other reason than that the alleged force was used while the plaintiff in *Bellows* was seated in the back of the police car, i.e., *after* the plaintiff was secured in the officers' custody.

*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), also cited by Brown, involved police actions taken in response to resistance to arrest but additionally involved allegations of serious physical abuse of the plaintiffs that are readily distinguished from the salient facts of this appeal, including, *inter alia*, "pressing their wrists back against their forearms in a way that caused lasting damage," dragging a plaintiff "by his legs, causing a second-degree burn on his chest," and "ramming" a

19

plaintiff's "head into a wall at high speed." *Id.* at 123. Vacating an award of summary judgment in favor of the municipal defendant, this Court opined that "[i]t is entirely possible that a reasonable jury would find, as the district court intimated, that the police officers' use of force was objectively reasonable given the circumstances and the plaintiffs' resistance techniques" but also that "a reasonable jury could also find that the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstances . . . ." *Id.* at 124. Plaintiff-appellant argues, unconvincingly, that the force alleged in *Amnesty America* "compares to, and if anything, is less than, the force used here." Pl.-Appellant's Br. 28.

Brown argues, further, that "*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010), clearly established that the officers' use of pepper spray in this case was unconstitutional." *Id.* Brown's reliance on this case ignores a critical factual distinction. In *Tracy*, this Court vacated an award of summary judgment in favor of a defendant police officer after noting that there was an issue of fact as to whether pepper spray was used against the arrestee before handcuffs were applied, or after. *Tracy*, 623 F.3d at 98. The opinion concludes that "a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force." *Id.* It is uncontested that Brown received pepper spray prior to, and in furtherance of, the officers' attempts to accomplish the handcuffing.

20

Finally, Brown draws our attention to several cases from other circuits. There is some tension in this Court's case law concerning whether out-of-circuit precedent can ever clearly establish law in this Circuit. *Compare Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006), *with Garcia v. Does*, 779 F.3d 84, 95 n.12 (2d Cir. 2015). Even assuming that such precedent may suffice in certain circumstances, however, we conclude that no such circumstances exist in this case. This is not a case, for example, "where the law was established in three other circuits and the decisions of our own court foreshadowed" the establishment of the rule of law on which Brown seeks to rely. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 61 (2d Cir. 2014).

Similarly, we must reject Brown's argument that summary judgment on qualified immunity grounds was improper because the officers allegedly violated the New York City Police Department Patrol Guide directive not to use pepper spray from a distance of less than three feet. Our presuming in Brown's favor the disputed fact as to the distance the officers maintained, as the District Court did, does not change our conclusion. Brown is unable to demonstrate that *any* administering of pepper spray at a distance of as short as one foot upon an uncooperative arrestee violated "clearly established" Fourth Amendment law against excessive force.

Brown argues that the two officers "were not entitled to qualified immunity since they violated clearly established law by using substantial and unnecessary force to arrest Ms. Brown when she posed no threat to the officers or others, and there were less

21

aggressive techniques to arrest her for a noncriminal and slight offense."

Pl.-Appellant's Br. 27. She adds that "[s]ince the officers knew other less aggressive techniques to arrest Ms. Brown, it was unreasonable and excessive to use more aggressive force than needed." *Id.* at 32. Her argument is grounded in the *Graham* factors, but this Court already has concluded that these factors "would seem to point toward a determination of excessive force," *Brown II*, 798 F.3d at 102, in concluding that a jury possibly could find the force used against Brown to have exceeded that permitted under the Fourth Amendment. Her positing that she posed no threat and that less forceful methods existed to accomplish her arrest is not directed to the inquiry we must make as to qualified immunity. Again, that inquiry is whether every reasonable police officer would view the force used by Naimoli and Plevritis, in the circumstances in which that force was applied, as excessive according to clearly established law.

## CONCLUSION

The mandate of this Court in *Brown II* did not preclude the District Court's considering, and ruling on, defendants' motion for summary judgment on the ground of qualified immunity. Defendants did not waive their qualified immunity defense, and the District Court committed no error in granting that motion. Accordingly, the judgment of the District Court is AFFIRMED.